IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

HANK JACOBUS,

                    Plaintiff,

v.                                          CIVIL ACTION  NO.  3:12-02032

MICHAEL HUERTA, FAA Administrator,

                    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Hank Jacobus's Objections (ECF No. 30) to the

Magistrate's Proposed Findings and Recommendations (ECF No. 29). For the reasons stated

below, Plaintiff's Objections (ECF No. 30) are **DENIED**, and the Magistrate's Proposed

Findings and Recommendations (ECF No. 30) are **ADOPTED in full**. The Court accordingly

**GRANTS** Defendant Michael Huerta's renewed motion to dismiss (ECF No. 25), and the Court

hereby **DISMISSES** Plaintiff's complaint. The Court also **DENIES** Plaintiff's petitions for

injunction (ECF Nos. 18, 24) and Plaintiff's petition to add a defendant (ECF No. 26).

### Statement of Facts

Plaintiff filed his original complaint against Federal Aviation Administration ("FAA")

official Michael Huerta on June 13, 2012, alleging that Plaintiff was the victim of retaliation,

harassment, defamation, and stalking through a scheme of constant surveillance. ECF No. 2.

Plaintiff claims that on September 12, 2009, he attempted to talk with a local pilot at a small

South Charleston airport, specifically to share safety concerns regarding that pilot's low banking

near homes. *Id.* ¶ 22. The pilot became "very angry," and subsequently Plaintiff "called the local

tower," presumably to relay the incident with the pilot. *Id.* ¶ 23. Plaintiff claims that he has thereafter been subjected to "24/7/365 surveillance" across four states and nine residences. *Id.* ¶¶ 2, 20. The FAA allegedly relies on "false rumors" about Plaintiff being a "threat" to justify the surveillance. *Id.* ¶ 2. The surveillance is facilitated by the government sharing his location with pilots. *Id.* ¶ 9. Plaintiff claims that pilots intentionally fly exactly over Plaintiff (*id.* ¶¶ 21, 29), intentionally "buzz" his roof (*id.* ¶ 35), and circle over his head (*id.* ¶ 42); planes are diverted from their original route to intentionally fly over him (*id.* ¶ 53); and the surveillance and harassment is conducted by such aircraft as jet liners, a drone, spy planes, a "bubble" chopper, and "low flying gas cans."

Plaintiff thereafter filed a supplemental memorandum, largely repeating or elaborating on details contained in the original complaint. ECF No. 8. For example, Plaintiff expounds that drones sometimes fly overhead twelve to fifteen times per hour, and that he encounters police "exactly" where he goes, approximately ten times per day. *Id.* at 1, 3. Defendant then filed a motion to dismiss or for a more definite statement, arguing that: Plaintiff did not present a plausible claim for relief; he failed to exhaust his administrative remedies; the Court lacked the jurisdiction to award non-monetary relief to Plaintiff on his tort claims; and Plaintiff's libel and slander claims were not within the Federal Tort Claim Act's ("FTCA") limited waiver of sovereign immunity. ECF Nos. 12, 13.

Plaintiff thereafter filed a petition for an injunction, in which he "requests this Court order Pl.'s name be removed from any and all watch lists and stop the FAA calling on Pl." ECF No. 18 at 3. In this petition, he alleged the pilot with whom Plaintiff argued reported Plaintiff as a "threat" to the FAA. *Id.* ¶ 1. The FAA accepted these false accusations and Plaintiff's name was placed on a watch list. *Id.* ¶¶ 1, 2. Plaintiff complained about the lack of "due process," and

clarified that he "isn't suing the FAA for doing the defaming, but for its negligence that caused" defamation, namely, the FAA telling pilots that Plaintiff poses a threat.[1] *Id.* ¶¶ 8, 17.

Plaintiff filed a "final amendment" a few days later, repeating many of the details found in previous filings. ECF No. 19. He repeated his request that this Court have his name removed from the watch list, and "asks the Court to hear his entire case based on major Constitutional violations, (Bill of Rights) that trump Sovereign Immunity." *Id.* at 3. He also stated that he has "left [the possibility of] money damages open." *Id.* ¶ 11. A few weeks later, Plaintiff filed a memorandum in support of having his name removed. ECF No. 20. He stated that while the decision to award of monetary damages is in the Court's discretion, his "main goal is [to get] his name cleared." *Id.* ¶ 4. He also questioned the ability of sovereign immunity to bar his lawsuit, stating that the doctrine is not mentioned in the Constitution. *Id.* ¶ 5.

Magistrate Judge Cheryl A. Eifert held an initial status conference on October 5, 2012, and thereafter entered an order denying Defendant's request to dismiss, but granting Defendant's motion for a more definite statement. ECF No. 22. To this end, Plaintiff was ordered to file an amended complaint:

> Plaintiff shall adopt by reference his prior factual allegations and shall add the following: (1) the legal theories under which he sues (e.g. violation of the Fourth Amendment); (2) the names of any additional defendants needed to obtain the relief he seeks, and (3) a specific description [of] the nature of the relief (e.g. declaratory judgment, injunctive relief).

*Id.* at 1.

---

[1] Plaintiff also attempted to draw a parallel between his situation and that of "Afifi." He does not provide a citation, but this Court believes he is referring to the case of *Afifi v. Holder*, No. 1:11-cv-00460-BAH (D.D.C. filed Mar. 2, 2011). He suggested that in that case, "[t]he Supreme Court "bar[r]ed transponders with no warrant for spying." ECF No. 18 ¶ 7. Mr. Afifi's case, however, has not yet been before the Supreme Court. Rather, a motion to dismiss and for summary judgment appears to be pending in the district court. Based on Plaintiff's subsequent filings, this Court believes that the Supreme Court case Plaintiff meant to refer to was *United States v. Jones*, 132 S. Ct. 945 (2012).

Pursuant to this Order, Plaintiff timely filed an amended complaint, reiterating the many years of surveillance, his placement on a watch list, and the FAA's acceptance of lies about him. ECF No. 23. In regards to legal theories, he claimed that he suffered violations of the Fourth, Fifth, Ninth, and Fourteenth Amendments, in addition to 18 U.S.C. § 2261. *Id.* ¶ 1. In support of his Fourth Amendment claim, he referred to *United States v. Jones* and *Afifi*. He also claimed that "Sovereign Immunity, not in the Constitution, can't bar Court redress of grave, multiple Constitutional violations here." *Id.* ¶ 12. Plaintiff's caption on this amended complaint referred to the adverse party as "Michael Huerta, et. al."  He stated that he is not able to sue TSA[2] or the pilot with whom he argued, and he "shouldn't sue police." He also alleged that "multiple FAA staff have punished Pl.," including "the high altitude control boss([e]s who diverted and directed commercial jets over Pl's locations." *Id.* ¶ 24.

In regards to relief, he stated that his "goal has been to clear his name," and that monetary damages are in the Court's discretion. *Id.* ¶ 28.[3] He also requested "the Court to order the FAA (or TSA) to notify him if it has removed him from the watch list," and to "show why and how Pl. was put on the list, why he's was [sic] not ever questioned and why local police are barred from questioning Pl. now." *Id.* ¶¶ 30, 31. He additionally requested that the Court "order the FAA to cease notifying small plane pilots of his whereabouts and to notify all [of them that] the way Pl. was labeled was so badly flawed, [and that] it can't be said or inferred he threatened anyone." *Id.* ¶ 32. He also requested certain TSA records. *Id.* ¶ 50.

Plaintiff thereafter filed a second petition for an injunction, requesting that "until the

---

[2] Plaintiff incorrectly refers to TSA as "Terrorists Screening Agency," *id.* ¶ 6, when in actuality this acronym stands for Transportation Security Administration.

[3] It appears that Plaintiff may have omitted filing a page of his amended complaint, as page three ends with ¶ 34, and page four begins with ¶ 48.

FAA can give proof Pl. threatened anyone, it be ordered to stop notifying small plane pilots of Pl's locations." ECF No. 24 ¶ 11. This petition's caption lists the defendants as "Michael Huerta, & Security Dir., East Reg. (name unknown) et. al."[4]

Defendant filed a renewed motion to dismiss on November 15, 2012, requesting dismissal of the amended complaint under Rule 8 of the Federal Rules of Civil Procedure on the grounds that it "does not provide the jurisdictional statement, a short and plain statement of his claims showing he is entitled to relief, or a clarification of the relief he seeks." ECF No. 25. Plaintiff never filed a response to this renewed motion to dismiss. On November 26, 2012, however, Plaintiff filed a petition seeking to add a defendant, specifically "the high altitude control center boss in the Indianapolis radar center," who is "in charge of routing all high altitude air craft through Wv." ECF No. 26. Plaintiff stated that he cannot obtain this individual's name.

Plaintiff filed a "Memorandum- TSA Update" in December 2012, stating that Plaintiff remains under surveillance, in violation of his Constitutional rights. ECF No. 27. He filed another "update" in February 2013, alleging that the surveillance continues without a warrant, includes "looking in Pl's barn." ECF No. 28. Furthermore, police intentionally drove toward Plaintiff in a distressing manner near the courthouse immediately following the October 2012 status conference.

Magistrate Judge Eifert issued Proposed Findings and Recommendations ("PF&R") recommending that Plaintiff's petitions for injunctions and to add a defendant be denied, and that the original complaint and amended complaint be dismissed with prejudice. ECF No. 29, Feb. 22, 2013. In summary, Judge Eifert found that Plaintiff failed to state a claim for which relief could be granted, noting that his claims were implausible and based on misunderstandings about

---

[4] This caption is repeated in documents 26, 27, 28, and 30.

the FAA and the watch list, and that Plaintiff did not create plausible links between his argument with the pilot, perceived flyovers, and the alleged surveillance and perpetuations of lies about Plaintiff. Furthermore, Plaintiff's claims for monetary damages would fail, he lacked a private right of action for stalking, he could not succeed on his request to be removed from the list given the FAA's lack of control over the list, and no Constitutional violation had been shown.

Plaintiff timely filed Objections to the PF&R. ECF No. 30. He stated there is a sufficient "factual basis" for his claims, as a sheriff told him he is targeted and a "Cabell County official verified it when Pl. said it got a Homeland Security grant soon after Pl. moved back, (part used just for him)." *Id.* ¶¶ 1, 2. He referred to a recent Supreme Court case that allegedly implicates sovereign immunity, but does not provide a case name or citation.[5] He additionally stated that "FAA Security is solely responsible" for his injuries, and that he has "met the goal of SF-95," which "no citizen would know to file." The Objections, like his other filings, reiterate the nature of the surveillance against him and the FAA's role. In closing, he noted that he does not have a lawyer, and that "he merits the same future chance with a Lawyer" as other individuals, given the gravity of these Constitutional violations.

In Section I, the Court discusses the standard of review applicable to the PF&R, the basis for liberal interpretation of pro se filings, and the standard for pleading plausible claims under the Federal Rules of Civil Procedure. In Section II, the Court reviews whether Plaintiff presents a plausible claim for which relief can be granted. In Section III, the Court addresses other grounds for dismissing the complaint in addition to implausibility. Lastly, in Section IV, the Court examines Plaintiff's petition to add a defendant to this case and his petitions for injunctions.

---

[5] Plaintiff referred to a February 18, 2013 Supreme Court case involving a pro se prisoner's allegations that he was raped. This Court is unable to determine which case this is.

6

# I.    Standard of Review

This Court's review of the magistrate's proposed findings and recommendations to which Petitioner objects is de novo. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). Therefore, this Court will review de novo the magistrate's determination that Plaintiff's motions for injunctive relief and to add a defendant should be dismissed, and that Plaintiff's complaint should be dismissed.

Although Plaintiff's Objections lack ideal clarity in specifying his protests to the PF&R, that difficulty is not fatal to his Objections. This is because pro se filings must be construed liberally, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In construing pro se filing liberally, however, the court must be careful not to "rewrite a petition to include claims that were never presented." *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998). Neither are courts required to "conjure up questions never squarely presented to them" or "construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

The importance of liberally construing Plaintiff's pro se pleadings must be interpreted in conjunction with the pleading standards under the Federal Rules of Civil Procedure. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used

to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-

specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## II.    Plausibility Analysis

### A. Plausibility of Surveillance

After conducting a de novo review of the pleadings, this Court finds that Plaintiff's complaint[6] should be dismissed for failure to state a claim for which relief may be granted, based on the implausibility of the claims presented. The causal chain that Plaintiff presents is riddled with too many holes and unsubstantiated conclusions to find that the complaint satisfies the pleading standard presented in Rule 8 and detailed in *Twombly* and *Iqbal*, even when construing his pro se filings liberally and taking the factual allegations in the complaint as true.

The Court, in arriving at this decision, has accepted as true Plaintiff's allegation that he argued with an unnamed pilot at a small airport in South Charleston in September 2009. It also accepts as true his allegations that aircraft thereafter "buzzed" his home and fly over or near him repeatedly, and he constantly sees police in his proximity. Plaintiff also, however, presents many

---

[6] Plaintiff filed an original complaint, ECF No. 2, and an amended complaint, ECF No. 23. For the sake of clarity, and because the amended complaint is meant to elaborate on the original complaint rather than merely replace it, the Court will refer to both documents collectively as "the complaint." Additionally, the Court's analysis here includes consideration of Plaintiff's supplemental memoranda as discussed in the Statement of Facts.

unsupported conclusions which the Court need not accept as true, namely that: the FAA is aware of Plaintiff's location at all times; the FAA tells pilots Plaintiff's locations and that Plaintiff is a threat; aircraft are directed to fly over Plaintiff; and Plaintiff's name was placed on the terrorist watch list at the direction of the FAA. Plaintiff does not explain how his exact location is monitored with such precision that aircraft appear overhead within minutes of his arrival. He does not specify any FAA employees involved in the plot against him, other than the unnamed control power boss. Also, he has not amended his complaint to include anyone outside the FAA.

Plaintiff attempts to bolster the "factual basis" for his claims by noting in his Objections that a sheriff told him he has been targeted. That claim, however, is inconsistent with Plaintiff's repeated assertions elsewhere that police—although constantly in his vicinity—avoid direct contact with him. Furthermore, Plaintiff states in his Objections that "[a] Cabell County official verified [the targeting scheme] when Pl. said it got a Homeland Security grant soon after Pl. moved back, (part used just for him)." In neither instance does he mention these individuals by name. Even accepting these statements as true, there is an insufficient factual basis to "raise a right to relief above the speculative level," given the overwhelming lack of plausibility found in the complaint.

The FAA is focused on airline safety and efficiency.[7] The FAA's Internal Security office "ensures this agency complies with public laws, national directives, and Department of Transportation policies that influence our security practices" and "creates an FAA environment

---

[7] FAA, *Mission* (Apr. 23, 2010), http://www.faa.gov/about/mission/ ("Our continuing mission is to provide the safest, most efficient aerospace system in the world."). The Court notes that it may take judicial notice of and rely on information not included in the pleadings but which can be found via government websites, reports, etc. *See United States v. Chester*, 628 F.3d 673, 692 (4th Cir. 2010); *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 990 (9th Cir. 2012).

that reduces the risks posed by" criminal activity.[8] Also, the FAA's Office of Emergency Operations, Communications and Investigations "does investigate airmen, employee, or contractor employee involvement in criminal activity as it applies to employment or certification."[9] However, that Office "refer[s] all criminal investigations to the Department of Transportation, Office of Inspector General or the Federal Bureau of Investigation," and does not conduct its own criminal investigations.[10] The FAA's limited security functions thus do not encompass the sort of surveillance that Plaintiff accuses the FAA of having committed. This understanding of the FAA's role is confirmed by examination of the functions of the Transportation Security Administration ("TSA"), now part of the Department of Homeland Security ("DHS"), which assumed the FAA's former security responsibilities over a decade ago.[11] Therefore, it appears highly improbable that the FAA has engaged in aerial surveillance of Plaintiff.

The FAA does control air traffic, including by organizing the routes of aircraft throughout the country.[12] However, the Agency is focused on efficiency, safety, and minimizing

---

[8] FAA, *Office of Security* (May 23, 2011), http://www.faa.gov/about/office_org/headquarters_offices/ash/ash_programs/security/.

[9] FAA, *Office of Emergency Operations, Communications and Investigations* (July 28, 2009), http://www.faa.gov/about/office_org/headquarters_offices/ash/ash_programs/investigations/.

[10] *Id.*

[11] FAA, *The Federal Aviation Administration: A Historical Perspective, 1903-2008*, 129 (2008), http://www.faa.gov/about/history/historical_perspective/media/historical_perspective_ch9.pdf ("FAA remained responsible for aviation security until February 13, 2002, when TSA took over those responsibilities.").

[12] FAA, *Air Traffic* (Sept. 21, 2009), http://www.faa.gov/air_traffic/briefing/.

the negative effects of aviation on civilians.[13] Keeping in mind these goals and the myriad factors that determine flight plans—outside of any potential vendettas again a private individual—it appears implausible that planes are being intentionally routed over Plaintiff, let alone for the purpose of harassing and conducting surveillance on him.

Based on the above discussion, this Court finds that Plaintiff's allegations are the sort of "delusional," "fantastic," and "fanciful" claims that warrant dismissal. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 327-28 (1989)). Plaintiff's case bears a striking resemblance to *Tooley v. Napolitano*, 586 F.3d 1006 (D.C. Cir. 2009), where the plaintiff complained to a commercial airlines representative about the need for stricter screening of airline luggage, and the government allegedly engaged in years of surveillance targeting the plaintiff, including ordering wiretaps on nine phones, having police wait outside his house, and placing a tracking device on his car. Also like the present case, that plaintiff alleged that the surveillance scheme was readily apparent,[14] and the scheme alleged defied current limits of technology. *Tooley,* 586 F.3d at 1009. The Court of Appeals affirmed dismissal of the complaint, characterizing the claims as "flimsier than doubtful or questionable- . . . essentially fictitious." *Id.* (internal quotation marks and citation omitted). Like the complaint in *Tooley*, Plaintiff's complaint should be dismissed based on its utter implausibility regarding the scheme of surveillance.

---

[13]   FAA, *Safety: The Foundation of Everything We Do* (Feb. 1, 2013), http://www.faa.gov/about/safety_efficiency/ ("Under the broad umbrella of safety and efficiency, we have several major roles: [including] . . . Developing and operating a system of air traffic control and navigation for both civil and military aircraft[; and] . . . Developing and carrying out programs to control aircraft noise and other environmental effects of civil aviation").

[14] *See, e.g.,* ECF No. 28 ¶ 1 (stating that the surveillance is "made very obvious.")

**B.  Plausibility of Inclusion on Terrorist Watch List**

Plaintiff's claims about the FAA's involvement with the terrorist watch list and FAA's alleged actions in adding him to the list are also highly implausible, based on how the watch list works. A single consolidated terrorist watch list has existed since 2003, and is under the control of the Federal Bureau of Investigation's ("FBI") Terrorist Screening Center ("TSC").[15] This watch list, also known as the Terrorist Screening Database ("TSDB"), includes "only individuals who are known or reasonably suspected to be or have been engaged in conduct constituting, in preparation for, in aid of, or related to terrorism."[16] TSDB data comes from either the Terrorist Identities Datamart Environment (for information about international terrorism) or FBI's Automated Case Support system (for information about domestic terrorism).[17] TIDE information is populated as follows:

> The NCTC ["National Counterterrorism Center"] receives information through nominations made by federal agencies. It is not necessary for an agency to be a member of the [Intelligence Community] to make nominations. Nomination information is placed in the NCTC central repository system, the Terrorist Identities Datamart Environment (TIDE).[18]

---

[15] FBI, *Terrorist Screening Center*, http://www.fbi.gov/about-us/nsb/tsc (last visited Apr. 17, 2013). This consolidation occurred pursuant to Homeland Security Presidential Directive 6, signed September 16, 2003. Compilation of Homeland Security Presidential Directives, U.S. Gov't Printing Office, Jan. 2008, 31-32.

[16] FBI, *Frequently Asked Questions- Terrorist Screening Center*, http://www.fbi.gov/about-us/nsb/tsc/tsc_faqs (last visited Apr. 17, 2013).

[17] DHS, Office of the Inspector General, *DHS' Role in Nominating Individuals for Inclusion on the Government Watchlist and Its Efforts to Support Watchlist Maintenance*, OIG-11-107, at 9 (Sept. 2011).

[18] DHS, Office of the Inspector General, *The DHS Process for Nominating Individuals to the Consolidated Terrorist Watchlist*, OIG-08-29, at 2 (Feb. 2008) (hereinafter "OIG-08-29"). *See also* Dep't of Justice, Office of the Inspector General, Audit Division, *Follow-up Audit of the Terrorist Screening Center*, Audit Report 07-41, at 3 (Sept. 2007) ("When a law enforcement or intelligence agency has identified an individual as a potential terrorist threat to the United States and wants that individual watchlisted, the source agency must nominate that person for inclusion

Although any federal agency in theory can nominate an individual to be included on the watch list, over ninety-five percent of nominations are made by the Department of State, the FBI, the Defense Intelligence Agency, and the Central Intelligence Agency.[19]

In contrast to those other federal agencies, the FAA's role in the watch list appears to be extremely limited:

> TSA collaborates with the Federal Aviation Administration to vet information related to terrorism and aviation records. When Federal Aviation Administration staff identifies information about known or suspected terrorists with pilot licenses, they notify the TSA. TSA staff we interviewed stated the information is important to the watchlist but, other than notifying the TIDE system record holder, it does not receive feedback on whether the NCTC includes it in current nominations.[20]

This suggests that the FAA's involvement with the watch list is limited to suspicious individuals who have pilot licenses, a category into which Plaintiff does not fall. This Court has found no indication that the FAA in actuality nominates individuals, especially those without pilot licenses, for inclusion on the terrorist watch list.

Furthermore, even if an individual is nominated, that person is not necessarily included in the watchlist:

> All nominations from source agencies to the consolidated watchlist are vetted through the FBI or the National Counterterrorism Center (NCTC). Analysts at NCTC or the FBI review the nomination information and decide whether or not the person is an appropriate candidate for inclusion on the consolidated watchlist. This review includes an evaluation of the information supporting the nomination, an examination of the quality and accuracy of the identifying information, and an

---

in the consolidated watchlist maintained by the TSC.") (hereinafter "DOJ Audit").

[19] OIG-08-29, at 3.

[20] *Id.* at 9. *See also* FBI, *Vision & Mission- Terrorist Screening Center*, http://www.fbi.gov/about-us/nsb/tsc/tsc_mission (last visited Apr. 17, 2013) ("The TSC only receives information collected by other government entities with pre-existing legal authority to do so. Each agency that contributes data to the TSC must comply with the law as well as its own policies and procedures to protect privacy rights and civil liberties.").

examination of whether sufficient identifying information is available. The FBI and NCTC are responsible for providing the TSC an unclassified subset of identifying information for individuals known or suspected to be or have been involved in activities related to terrorism.[21]

The TSC does have an emergency nomination process, but even under this system the individual is vetted following their "emergency" addition to the watch list.[22]

The chances of the FAA nominating any person to the list is extremely small, and the chances of the FAA nominating an individual without a pilot license, such as Plaintiff, is even smaller. Plaintiff claims that he was included on the watch list without proper investigation. Based on the information above, however, even if the FAA did nominate Plaintiff for inclusion on the watch list—which itself is highly unlikely—Plaintiff would: a) in the case of a non-emergency nomination, only be placed on the watch list after an investigation, or b) in the case of an emergency nomination, be investigated subsequently to ensure that continued inclusion on the list is proper. Also, Plaintiff's argument with a small plane pilot would itself be insufficient to justify his inclusion on the watch list for suspected terrorist activity.

The watchlist acts as a database that agencies use to screen individuals trying to engage in certain activities:

By supporting the ability of front-line screening agencies to positively identify known or suspected terrorists trying to obtain visas, enter the country, board aircraft, or engage in other activity, the consolidated Terrorist Watchlist is one of the most effective counterterrorism tools for the U.S. government.[23]

---

[21] DOJ Audit at 3 (footnotes omitted).

[22] *Id.* at 3 n.24.

[23] FBI, *Vision & Mission- Terrorist Screening Center*, http://www.fbi.gov/about-us/nsb/tsc/tsc_mission (last visited Apr. 17, 2013) (additionally stating that the watch list "contains thousands of records that are updated daily and shared with federal, state, local, territorial, tribal law enforcement, and Intelligence Community members as well as international partners to ensure that individuals with links to terrorism *are appropriately screened*." (emphasis added)).

A variety of encounters with government officials can trigger this screening:

> The TSC shares the terrorist information contained in its Terrorist Screening Database (TSDB) by exporting or sending data "downstream" to other screening systems, such as the State Department's Consular Lookout and Support System (CLASS), DHS's Interagency Border Inspection System (IBIS), the Transportation Security Administration's (TSA) No Fly list, the FBI's Violent Gang and Terrorist Organization File (VGTOF) within its National Crime Information Center (NCIC) system, and others. Watchlist information is then available for use by U.S. law enforcement and intelligence officials across the country and around the world.[24]

The No Fly list is used to screen for individuals who are prohibited from flying on aircraft, while the Selectee list is used to screen for individuals requiring additional screening before boarding.[25]

None of the events described by Plaintiff in his pleadings indicate that his name is included on the watch list. Other than his conversation with the sheriff, Plaintiff mentions no encounters with law enforcement that would trigger a search of his name within the TSDB. Plaintiff was not denied entry onto a plane, and has not experienced enhanced airport security screening. Plaintiff does not mention any attempt to pass through a U.S. border or attain a visa or passport. Based on the articulated uses of the watch list, it does not appear that the watch list is used to conduct the sort of general surveillance that Plaintiff alleges. In summary, Plaintiff has not stated a plausible claim concerning his inclusion on the terrorist watch list. It is not only implausible that the FAA would hypothetically nominate him for inclusion on the list, but also implausible that he would be included on the list after investigation when his only reason for inclusion is his argument with a small plane pilot. Furthermore, none of the incidents described by Plaintiff are indicative of inclusion on the watch list, given the way in which information on

---

[24] DOJ Audit at 4 (footnote omitted).

[25] *Id.* at 68.

that list is typically used.

Taken together, Plaintiff's claims regarding surveillance and inclusion on the watch list are implausible, and this provides sufficient grounds for dismissal on his complaint. Regardless, this Court will explore additional grounds for dismissal.

### III.     Failure of Complaint on Other Grounds

**A.  Federal Tort Claims Act claim**

Even if Plaintiff's complaint did not fail for implausibility, his claim for relief under the FTCA would nonetheless be dismissed. A limited waiver of sovereign immunity[26] is found in the FTCA, under which an individual can pursue relief from the United States for certain claims sounding in tort:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). As a pre-requisite to filing the lawsuit, however, "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). Presentation occurs "when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied [in part] by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of

---

[26] Plaintiff argues that "Sovereign Immunity, not in the Constitution, can't bar Court redress of grave, multiple Constitutional violations here." ECF No. 23 ¶ 12. This Court notes that the doctrine of sovereign immunity is well-accepted, regardless of the fact that it is not in the Constitution.

the incident." 28 C.F.R. § 14.2(a). This requirement cannot be waived, and if it is not satisfied, then the claim fails for lack of jurisdiction. *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986) (citing *Kielwien v. United States,* 540 F.2d 676, 679 (4th Cir. 1976)).

Plaintiff cannot satisfy the pre-requisite of having properly presented his claim to a federal agency before filing suit. Plaintiff admits that he has not submitted Standard Form 95 to the FAA. Although Plaintiff claims to have called and emailed the FAA over the past three years, this does not suffice as a "written notification of an incident." *See Reisman v. Bullard*, 14 Fed. App'x 377, 379 (6th Cir. 2001) (citations omitted) ("Although it is undisputed that the Reismans made many informal inquiries to the IRS and communicated their displeasure over the agency's audit of their income tax return, they did not establish that they ever filed a proper FTCA claim with the IRS or that such a claim was denied by the agency."). This provides sufficient independent grounds for dismissing any claims under the FTCA.

### B.  Failure of Possible *Bivens* Claim

Plaintiff has not explicitly asserted a *Bivens* claim[27] under this complaint. Even if this Court properly inferred such a cause of action, in line with the Court's mandate to construe pro se filings liberally, any possible *Bivens* claim would ultimately fail. *Bivens* claims must be asserted against federal employees in their individual capacity, which Plaintiff does. *See Reinbold v. Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999). His claim nonetheless fails, however, because he has not sufficiently alleged violations of his Constitutional rights. He claims in his amended complaint that he has suffered violations of the Fifth, Ninth, and Fourteenth Amendments, but this court finds that he has not made a prima facie showing of a violation of

---

[27] Through a *Bivens* claim, a petitioner may collect monetary damages for injuries caused by federal officials or employees which violate certain portions of the Constitution. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388 (1971).

any of these Amendments.

He also claims he has suffered violation of his Fourth Amendment rights, and supports this claim by pointing to *United States v. Jones*, 132 S. Ct. 945 (2012), and *Afifi v. Holder*, No. 1:11-cv-00460-BAH (D.D.C. filed Mar. 2, 2011). These cases, however, do not support Plaintiff's claim. *Afifi* is still subject to a pending motion to dismiss and for summary judgment, and involves the placement of a GPS tracking device on a car. *Jones* tackled the legal question of whether the use of a GPS tracking device on a car to monitor its movements was a search under the Fourth Amendment, and even suggests in dicta that aerial surveillance poses no constitutional violation. *See Jones*, 132 S. Ct. 953 (citing *Kyllo v. United States*, 533 U.S. 27, 31-32 (2001)) ("This Court has to date not deviated from the understanding that mere visual observation does not constitute a search."). Plaintiff points to no other cases in support of his contention that he has suffered a Constitutional violation due to the alleged surveillance, and the Court will not probe further into the legal basis for any such arguments.[28]

### C.  Failure of 18 U.S.C. § 2261A Claim

Plaintiff repeatedly cites the prohibition of "stalking" found in 18 U.S.C. § 2261; that provision, however, addresses interstate domestic violence, and is therefore not applicable to this lawsuit. This Court believes that Plaintiff instead meant to cite 18 U.S.C. § 2261A, which prohibits stalking. That provision is a criminal statute, and criminal statutes typically do not include a private right of action. In such an instance, the court must decide "whether Congress intended to create the private right of action," and that "analysis must begin with the language of the statute itself." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (citations omitted).

---

[28] Plaintiff additionally argues that "barring him from suing the Gov., while others may, [such as] whistleblowers, minorities, etc., deprives him of equal protection of the Constitution." ECF No. 23 ¶ 13. The Court finds this assertion to be without merit, and Plaintiff has not sufficiently alleged any sort of equal protection violation.

In regards to language, the statute does not on its face provide a private right of action for Plaintiff to sue for relief. Although legislative history can also be considered, *see id.* at 571, given the implausibility of the stalking claim, it is unnecessary to engage in further analysis.

### D.  Inability to Have FAA Remove Him From the List

Plaintiff asks that the Court order the FAA to remove his name from the watch list. Aside from the implausibility of Plaintiff's underlying claim, the Court cannot order the FAA to remove his name from the list because, practically speaking, the FAA's only involvement with population of the list is to potentially nominate individuals for inclusion. The FAA does not ultimately select who is on the list, and does not control who is removed from the list.

In fact, the website for the Terrorist Screening Center includes a section on "Redress Procedures" for individuals who have been subject to screening activities that lead them to believe they are wrongfully on the list.[29] As explained on the website, although "[t]he TSC does not accept redress inquiries directly from the public," individuals "should contact the relevant screening agency with their questions or concerns about screening." The FAA does not customarily use the list the screen individuals, however, and so there would be no need for an individual to contact the FAA concerning redress.  Furthermore, the TSC is the only organization able to remove an individual from the list. The inability to attain relief here mirrors that in *Latif v. Holder*, where the plaintiffs argued for their removal from the watchlist:

> Here, Plaintiffs demand to know why they are apparently included on the List and an opportunity to advocate for their removal. Ordering TSA to tell Plaintiffs why they were included on the List and to consider their responses in deciding whether they should remain on it, would be futile. Such relief must come from TSC—the sole entity with both the classified intelligence information Plaintiffs want and the authority to remove them from the List.

---

[29]   FBI, *Redress Procedures- Terrorist Screening Agency*, http://www.fbi.gov/about-us/nsb/tsc/tsc_redress (last visited Apr. 17, 2013).

686 F.3d 1122, 1129 (9th Cir. 2012). The FAA has no power to remove an individual from the list, and so the Court would not be able to grant this relief.

Therefore, in summary, there are sufficient grounds for dismissing Plaintiff's complaint apart from the underlying implausibility of his claims.

## IV.    Denial of Other Petitions

### A.  Petition to Add Defendant

Plaintiff filed a petition seeking to add a defendant to the case, specifically "the high altitude control center boss in the Indianapolis radar center," who is "in charge of routing all high altitude air craft through Wv." ECF No. 26. Plaintiff states that he cannot obtain this individual's name. Plaintiff could not succeed in an FTCA claim against this unnamed individual because Plaintiff has not followed the pre-requisites for bringing an FTCA action, as discussed previously. Also for the same reasons previously stated, Plaintiff could not succeed on a *Bivens* claim against this individual or bring a criminal stalking action against him. Furthermore, given the underlying implausibility of the claims alleged, any claim against this control tower boss as part of this complaint would not succeed. Therefore, the Court denies this petition.

### B.  Petitions for Injunction

Plaintiff filed a petition in which he "requests this Court order Pl.'s name be removed from any and all watch lists and stop the FAA calling on Pl." ECF No. 18 at 3. As explained above, this Court cannot order the FAA to remove Plaintiff's name from the watch list. Also, assuming that "calling on Pl." refers to conducting surveillance and sharing information about Plaintiffs' whereabouts, the Court also will not order this relief, as the underlying claims surrounding the surveillance are implausible. Therefore, this petition for injunctive relief is denied.

Plaintiff filed a second petition for an injunction, requesting that "until the FAA can give proof Pl. threatened anyone, it be ordered to stop notifying small plane pilots of Pl's locations." ECF No. 24 ¶ 11. Because Plaintiffs' claims that the FAA has told other pilot's about Plaintiff's whereabouts is implausible, the Court also denies this petition for injunctive relief.

### Conclusion

For the reasons stated above, Plaintiff's Objections (ECF No. 30) are **DENIED**, and the Magistrate's Proposed Findings and Recommendations (ECF No. 30) are **ADOPTED in full**. The Court accordingly **GRANTS** Defendant Michael Huerta's renewed motion to dismiss (ECF No. 25), and the Court hereby **DISMISSES** Plaintiff's complaint. The Court also **DENIES** Plaintiff's petitions for injunction (ECF Nos. 18, 24) and Plaintiff's petition to add a defendant (ECF No. 26).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        April 22, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE

22